MICHAEL VON LOEWENFELDT (178665)
mvl@wvbrlaw.com
MARIA V. RADWICK (253780)
radwick@wvbrlaw.com
**WAGSTAFFE, VON LOEWENFELDT,**
**BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, CA 94111
Telephone: (415) 357-8900
Fax: (415) 357-8910

AVI J. LIPMAN (pro hac vice pending)
alipman@mcnaul.com
CLAIRE MARTIROSIAN (pro hac vice pending)
cmartirosian@mcnaul.com
**McNAUL EBEL NAWROT & HELGREN PLLC**
600 University Street, Suite 2700
Seattle, Washington 98101
Telephone (206) 467-1816
Fax: (206) 624-5128

Attorneys for Plaintiffs
BRAD PETERS, DAVID GRAY, and
PAUL STAELIN

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRAD PETERS, DAVID GRAY, AND PAUL STAELIN,

                    Plaintiffs,

        v.

INFOR (US), INC.,

                    Defendant.

Case No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Brad Peters, David Gray, and Paul Staelin ("Plaintiffs") allege against Defendant Infor (US), Inc. ("Infor" or "Defendant") as follows:

## PARTIES

1.      Plaintiff Brad Peters is an individual who resides in King County, Washington.

2.      Plaintiff Paul Staelin is an individual who resides in Contra Costa County, California.

3.      Plaintiff David Gray is an individual who resides in the United Kingdom.

4.      Upon information and belief, Infor is a Delaware corporation with its principal place of business in New York, New York.

## JURISDICTION

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      The Court has personal jurisdiction over Infor pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure 410.10, in that Infor transacts business in California; the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated, in part, from California; and Infor has established sufficient minimum contacts with California such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## VENUE AND INTRADISTRICT ASSIGNMENT

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Infor is subject to the Court's personal jurisdiction.

8.      This case is properly assigned to the San Francisco or Oakland divisions of this Court because Birst, Inc. ("Birst"), a wholly-owned subsidiary of Infor, is based in San Francisco County, Peters signed a contract with Infor in San Francisco County, and Staelin signed a contract with Infor in Contra Costa County. Thus, a substantial part of the acts that give rise to this action arose in those counties.

**FACTS**

Peters and Staelin Co-Found Birst

9.      Plaintiffs Brad Peters and Paul Staelin co-founded a technology company called Birst in 2004. Led by Peters as Chairman and Chief Executive Officer and Staelin as Chief Customer Officer, Birst developed and offered a cloud-based business intelligence and business analytics platform that helps organizations understand and optimize complex processes in less time than traditional business intelligence solutions. Built with patented automation and machine learning technologies developed by Peters and Staelin, Birst software connects teams and applications across an enterprise through a trusted network of analytics and insights to inform smarter decisions. This approach helps companies improve profitability, reduce costs, increase revenues, and transform the way they do business.

10.      Prior to Infor's acquisition of Birst in 2017 (the "Acquisition"), Birst supplied its software to over 100 other cloud-based technology companies to embed in their own products and solutions.

11.      Birst was the number one provider of embedded analytics as ranked by Gartner Research for many years. One of Infor's subsidiaries, Talent Science, began embedding Birst's software as part of its offerings several years before the Acquisition.

12.      Plaintiff David Gray joined Birst as a sales executive in June 2013. Mr. Gray initially spearheaded Birst's sales and marketing in Europe and Asia, eventually rising to the position of Senior Vice President of Global Sales, responsible for all sales for the Birst division.

Birst Is Acquired by Infor in 2017

13.      In or around October 2016, Birst began negotiating with Infor, a multi-national enterprise software company headquartered in New York, New York, regarding a potential acquisition of Birst by Infor, with Infor making an initial bid for the company in December.

14.      In or around May 2017, the Acquisition closed, and Birst became a wholly-owned subsidiary of Infor.

COMPLAINT

15.     Plaintiffs subsequently signed contracts with Infor ("Offer Letters"), each of which provided for Earnout Bonuses based the Acquisition. Peters' Offer Letter was dated May 26, 2017, and countersigned by Peters on May 30, 2017. *See* **Exhibit A**. Staelin's Offer Letter was dated May 30, 2017, and countersigned by Staelin on May 30, 2017. *See* **Exhibit B**. Gray's Offer Letter, which purported to amend and restate a prior agreement, was dated July 25, 2018, and countersigned by Gray on August 2, 2018. *See* **Exhibit C**.

<u>Plaintiffs Are Promised Earnout Bonuses</u>

16.     Among other things, each Offer Letter provided that Plaintiffs were entitled to receive earnout bonuses ("Earnout Bonuses") based on the sale of Birst products and services during Infor's fiscal year 2018 ("FY18") and fiscal year 2019 ("FY19").

17.     Plaintiffs were induced to continue working for Infor and its affiliated companies after the Acquisition by the promise of the Earnout Bonuses, and the promise that Infor would grow Birst's business by, among other things, (a) promoting and selling Birst products and services on a stand-alone basis and as part of Infor-led sales cycles; (b) promoting and selling Birst products and services alongside other Infor products and services as part of Infor-led sales cycles; (c) bundling Birst's products and services for subscription along with Infor's products and services; and/or (d) embedding Birst products into products offered by Infor.

18.     "Bundling" meant that Birst products and services were provided alongside Infor products and services, but not listed, quoted, or priced independently.

19.     By contrast, "embedding" Birst software into Infor products meant combining features and tools developed by Birst within software programs offered by Infor, such that Birst capabilities were integrated into Infor products and accessible to end-users within those products. Embedded software was not listed, quoted, or priced by Infor separately. The embedding process allowed Birst's rich analytical capabilities to be integrated into Infor's other offerings.

20.     The Offer Letters contemplate that the Earnout Bonuses will be payable at the end of each applicable fiscal year, following completion of Infor's financial audit with respect to each fiscal year, and in no event later than December 31 of the same calendar year, i.e., the

Earnout Bonus for FY18 was to be paid to Plaintiffs no later than December 31, 2018 and the Earnout Bonus for FY19 is to be paid to Plaintiffs no later than December 31, 2019.

21.    Peters' Offer Letter provides that his FY18 Earnout Bonus shall be an amount equal to 35% of the amount by which FY18 Bookings exceed $18 million. Peters' Offer Letter provides that his FY19 Earnout Bonus shall be an amount equal to 28% of the amount by which FY19 Bookings exceed $21 million.

22.    Staelin's Offer Letter provides that his FY18 Earnout Bonus shall be an amount equal to 11% of the amount by which FY18 Bookings exceed $18 million. Staelin's Offer Letter provides that his FY19 Earnout Bonus shall be an amount equal to 8% of the amount by which FY19 Bookings exceed $21 million.

23.    Gray's Offer Letter provides that his FY18 Earnout Bonus shall be an amount equal to 5% of the amount by which FY18 Bookings exceed $18 million. Gray's Offer Letter provides that his FY19 Earnout Bonus shall be an amount equal to 11% of the amount by which FY19 Bookings exceed $21 million.

24.    The Offer Letters define Bookings as the annual contract value of subscriptions from Birst products or services sold in the applicable fiscal year.

25.    The Offer Letters further provide that if Birst products or services are sold bundled or in combination with other products or services offered by Infor, the annual contract value for purposes of the Earnout Bonuses shall be calculated using the list price for the Birst products and services as if they had been sold individually. The foregoing provision applies to any situation in which Infor (a) sold Birst products or services in a bundle alongside Infor products or services; or (b) sold Infor products or services into which Birst products had been embedded.

<u>Infor Compromises the Generation of Bookings in FY18,</u>
<u>Which Unlawfully Disqualifies Plaintiffs from Receiving FY18 Earnout Bonuses</u>

26.    Following the closing of the Acquisition in May 2017, Infor (a) failed to timely embed Birst products into Infor's products; (b) failed to timely bundle Birst's products and services for subscription along with Infor's products and services; and (c) failed to provide

adequate effort to promote and sell the Birst offerings as part of Infor-led sales cycles. As a result, the amount of Bookings associated with Birst's products and services was substantially lower than it should have been.

27.     For purposes of calculating the Earnout Bonuses, FY18 ended on April 30, 2018. After that point, Infor determined that FY18 Bookings did not exceed $18 million and refused to pay Plaintiffs any Earnout Bonus for FY18.

28.     FY18 Bookings would have exceeded $18 million, and substantial Earnout Bonuses would have been payable to Plaintiffs, if Infor had fulfilled its promises and obligations to timely (a) embed Birst products into Infor's products; (b) bundle Birst's products and services for subscription with Infor's products and services; and (c) adequately promote and sell the Birst offerings as part of Infor-led sales cycles.

<u>Infor Terminates Plaintiffs' Employment</u>

29.     Infor terminated the employment of Peters and Staelin effective October 7, 2019. Gray's employment was terminated effective October 31, 2019.

30.     Plaintiffs were each terminated without cause.

31.     Upon the effective date of their respective terminations, all unpaid wages owed to Peters and Staelin became payable under the laws of Washington State and California.

<u>Infor Improperly Calculates FY19 Bookings</u>
<u>Which Artificially Reduces Plaintiffs' FY2019 Earnout Bonuses</u>

32.     FY19 ended on April 30, 2019.

33.     In December 2019, Infor informed Plaintiffs that it had determined that FY19 Bookings to be $22,757,872, resulting in Earnout Bonuses of $492,204.10 to Peters, $140,629.76 to Staelin, and $193,365.92 to Gray.

34.     Infor's calculation of FY19 Bookings repudiated and thereby materially breached the terms of the Offer Letters by failing in numerous respects to account for subscription revenue associated with Birst products and services, including but not limited to revenue generated through the sale of Birst products and services that had (by FY19) been embedded within Infor's products and services and/or bundled with Infor products and services.

35.     If Infor had properly calculated the Birst subscription revenue for FY19, the Earnout Bonuses payable to Plaintiffs would be substantially higher.

36.     Infor's breaches of the Offer Letters have caused damage to Plaintiffs in an amount in excess of $75,000 as to each Plaintiff.

<u>Infor Fails to Timely Pay Retention Bonuses Due to Peters</u>

37.     In March 2019, Infor and Peters signed an agreement (the "Peters Retention Agreement") requiring that Infor would pay Peters additional bonuses for remaining employed at Infor ("Retention Bonuses"). If Peters remained continuously employed by Infor through October 31, 2019, Infor promised to pay him an $800,000 Retention Bonus ("First Retention Bonus"). If he remained continuously employed by Infor through April 30, 2020, Infor promised to pay Peters another $800,000 Retention Bonus ("Second Retention Bonus"). If he remained continuously employed by Infor through October 31, 2020, Infor promised to pay Peters would receive a third $800,000 Retention Bonus ("Third Retention Bonus").

38.     Infor and Peters also agreed that the Retention Bonuses would be payable to Peters in the event that he was terminated by Infor without cause prior to the specified dates associated with each Retention Bonus.

39.     As stated above, Peters was terminated by Infor without cause effective October 7, 2019.

40.     Infor paid Peters the First Retention Bonus on October 30, 2019.

41.     Despite Peters' repeated requests, Infor has refused to pay Peters his Second and Third Retention Bonuses, taking the position that they are not payable until April and October 2020, respectively.

42.     Infor's actions and omissions have materially breached the Peters Retention Agreement, thereby damaging Peters.

**FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT (EARNOUT BONUSES)**
**(by all Plaintiffs against Infor)**

43.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

44. The Offer Letters are contracts enforceable at law, which Infor has materially breached by failing to calculate and pay the full and accurate amount of Plaintiffs' Earnout Bonuses for FY18 and FY19.

45. As a result of Infor's breaches, Plaintiffs have been damaged in an amount to be proven at trial.

### SECOND CAUSE OF ACTION:
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (by all Plaintiffs against Infor)

46. Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

47. As implied by the Offer Letters, Infor owed Plaintiffs a duty of good faith and fair dealing.

48. Through its actions and omissions, Infor has breached the implied covenant of good faith and fair dealing, including by thwarting Plaintiffs from receiving the intended benefits of their Offer Letters, namely the full amount of their FY18 and FY19 Earnout Bonuses.

49. As a result of Infor's breaches, Plaintiffs have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION:
### PROMISSORY ESTOPPEL
### (by all Plaintiffs against Infor)

50. Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

51. Plaintiffs were induced to remain employed by Infor and its affiliated companies after the Acquisition, by Infor's promises to (a) timely embed Birst software into Infor's products; (b) timely bundle Birst's products and services for subscription with Infor's products and services; and (c) timely promote and sell the Birst offerings both independently and as part of Infor-led sales cycles. Infor did not fulfill the foregoing promises.

52. Infor should reasonably have expected its promises to cause Plaintiffs to change their position, and in fact Plaintiffs did change their position by agreeing to remain employed by

1    Infor and its affiliated companies. Plaintiffs' reliance of Infor's promises was justified, such that

2    injustice can be avoided only by enforcement of the promises.

3        53.    Infor's failure to deliver on those promises has resulted in damages to Plaintiffs in

4    an amount to be proven at trial.

5                        **FOURTH CAUSE OF ACTION:**
                  **FAILURE TO PAY WAGES IN VIOLATION OF**
6           **CAL. LAB. CODE §§ 201, 203 (EARNOUT BONUSES)**
                        **(by Plaintiff Staelin Against Infor)**
7

8        54.    Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set

     forth fully herein.
9
         55.    Upon executing the Offer Letter with Infor, Plaintiff Staelin became an employee
10
     of Infor entitled to wages. The Offer Letter identified Earnout Bonuses as part of Staelin's
11
     compensation. The Offer Letter expressly made Earnout Bonuses contingent on Staelin's
12
     agreeing to become an Infor employee.
13
         56.    Staelin was employed by Infor in California during FY18 and FY19.
14
         57.    Pursuant to Cal. Lab. Code § 201, at the time Infor terminated Staelin's
15
     employment, Infor was obligated to pay Staelin his earned and unpaid wages, including Earnout
16
     Bonuses for FY18 and FY19. In violation of § 201, Infor failed to pay Staelin any Earnout Bonus
17
     for FY18, and has only offered to pay a portion of the Earnout Bonus for FY19. Both Earnout
18
     Bonuses are now due and owing. Infor has refused and continues to refuse to pay Staelin the
19
     Earnout Bonuses he is owed.
20
         58.    Since the date of Staelin's termination by Infor, Staelin has been available and
21
     ready to receive the due and owing Earnout Bonuses. Staelin has not refused to receive any
22
     payment, nor has Staelin been absent from his regular place of residence.
23
         59.    Infor's failure to pay Staelin the full Earnout Bonuses due and owing for FY18
24
     and FY19 was willful in that Infor has denied Staelin is entitled to any Earnout Bonus for FY18,
25
     and the Earnout Bonus Infor has agreed to pay Staelin for FY19 is substantially lower than it
26
     should be.
27

28

60.     Infor's willful failure to pay Staelin the Earnout Bonuses due and owing for FY18 and FY19 constitutes a violation of Cal. Lab. Code § 203, which provides that an employee's wages will continue as a penalty until paid up to 30 days from the time the wages were due. Staelin is therefore entitled to statutory penalties under § 203.

**FIFTH CAUSE OF ACTION:**
**FAILURE TO PAY WAGES IN VIOLATION OF**
**CAL. LAB. CODE §§ 201, 203 (FY18 EARNOUT BONUS)**
**(by Plaintiff Peters Against Infor)**

61.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

62.     Upon executing the Offer Letter with Infor, Plaintiff Peters became an employee of Infor entitled to wages. The Offer Letter identified Earnout Bonuses, as well as Retention Bonuses, as part of Peters' compensation. The Offer Letter expressly made Earnout Bonuses contingent on Peters becoming an Infor employee.

63.     Peters was employed by Infor in California during FY18.

64.     Pursuant to Cal. Lab. Code § 201, at the time Infor terminated Peters' employment, Infor was obligated to pay Peters his earned and unpaid wages, including an Earnout Bonus for FY18. In violation of § 201, Infor failed to pay Peters any Earnout Bonus for FY18. Infor has refused and continues to refuse to pay Peters the FY18 Earnout Bonus he is owed.

65.     Since the date of Peters' termination from employment with Infor, Peters has been available and ready to receive the due and owing Earnout Bonus. Peters has not refused to receive any payment, nor has Peters been absent from his regular places of residence.

66.     Infor's failure to pay Peters the Earnout Bonus due and owing for FY18 was willful in that Infor has denied Peters is entitled to any Earnout Bonus for FY18.

67.     Infor's willful failure to pay Peters the Earnout Bonus due and owing for FY18 constitute a violation of Cal. Lab. Code § 203, which provides that an employee's wages will continue as a penalty until paid up to 30 days from the time the wages were due. Peters is therefore entitled to statutory penalties under § 203.

**SIXTH CAUSE OF ACTION:**
**FAILURE TO PAY WAGES IN VIOLATION OF**
**RCW 49.48 et seq. AND RCW 49.52 et seq. (FY19 EARNOUT BONUS)**
**(by Plaintiff Peters Against Infor)**

68.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

69.     Chapter 49.48 of the Revised Code of Washington State ("RCW") makes it unlawful for any employer to withhold or divert any portion of a Washington State employee's wages.

70.     Peters was employed by Infor in Washington State during FY19.

71.     As a result of Infor's failure to pay the full amount of Peters' Earnout Bonus for FY19, Infor is liable to Peters for failure to pay wages due to Peters at the end of the established pay period after Peters' termination without cause.

72.     Chapter 49.52.070 of the RCW provides that any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable for twice the amount of the wages unlawfully withheld together with costs of suit and a reasonable sum for attorney's fees.

73.     Infor's failure to pay the full amount of Peters' FY19 Earnout Bonus was willful.

74.     As a result of Infor's willful failure to pay the full amount of Peters' FY19 Earnout Bonus, Infor is liable to Plaintiff Peters for willfully withholding wages in violation of RCW 49.52.070.

**SEVENTH CAUSE OF ACTION:**
**BREACH OF CONTRACT (RETENTION BONUSES)**

**(by Plaintiff Peters Against Infor)**

75.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

76.     The Peters Retention Agreement is a contract enforceable at law, which Infor has materially breached by failing to timely pay Peters' Second and Third Retention Bonuses.

77.     As a result of Infor's breaches of the Peters Retention Agreement, Peters has been damaged in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION:**

## FAILURE TO PAY WAGES IN VIOLATION OF RCW 49.48 et seq.
## AND RCW 49.52 et seq. (RETENTION BONUSES)
### (by Plaintiff Peters Against Infor)

78.     Plaintiffs re-allege and incorporate the allegations of paragraphs 1-42 as if set forth fully herein.

79.     Chapter 49.48 of the RCW makes it unlawful for any employer to withhold or divert any portion of a Washington State employee's wages.

80.     Peters was employed by Infor in Washington State when he executed and performed under the Peters Retention Agreement.

81.     Under the express terms of the Peters Retention Agreement, Peters' Retention Bonuses became payable upon his termination of employment by Infor.

82.     As a result of Infor's failure to timely pay Peters' Second and Third Retention Bonuses, Infor is liable to Peters for failure to pay wages due to Peters at the end of the established pay period after Peters' termination without cause.

83.     Infor's failure to timely pay Peters' Second and Third Retention Bonuses was willful.

84.     As a result of Infor's willful failure to timely pay Peters' Second and Third Retention Bonuses, Infor is liable to Plaintiff Peters for willfully withholding wages in violation of RCW 49.52.070.

### PRAYER FOR RELIEF

WHEREFORE, having asserted its cause of action against the Infor, Plaintiffs pray the following relief:

A.      For judgment against Infor on Plaintiffs' claims, damages, and penalties in an amount to be proven at trial;

B.      For an award of Plaintiffs' costs and attorney's fees pursuant to contract, statute, other applicable law, and/or recognized grounds in equity;

C.      For pre-judgment and post-judgment interest on Plaintiffs' claims at the highest rate allowable by law; and

1    D.    For such other and further relief as the Court deems just and proper.

2   DATED: December 11, 2019            WAGSTAFFE, VON LOEWENFELDT,
3                                       BUSCH & RADWICK LLP

4                                 By  ___/s_____
5                                     MICHAEL VON LOEWENFELDT

6
7                                     MCNAUL EBEL NAWROT & HELGREN
                                      PLLC
8                                 By _____
9                                     AVI J. LIPMAN

10                                    Attorneys for Plaintiffs
11                                    BRAD PETERS, DAVID GRAY, and
                                      PAUL STAELIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand trial by jury.

DATED: December 11, 2019

WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK LLP

By ___/s___
MICHAEL VON LOEWENFELDT

McNAUL EBEL NAWROT & HELGREN
PLLC

By _____
AVI J. LIPMAN

Attorneys for Plaintiffs
BRAD PETERS, DAVID GRAY, and
PAUL STAELIN

- 13 -
COMPLAINT

Exhibit A



641 Avenue of the Americas
New York, NY 10011
800-260-2640
infor.com

May 26, 2017

Bradley Peters
118 Alta St
San Francisco, CA  94133

Re:  Employment offer in connection with the acquisition of Birst, Inc.

Dear Brad,

In connection with the anticipated acquisition of Birst, Inc. and its subsidiaries (collectively, "Birst") by Infor (US), Inc. (collectively with its affiliates and subsidiaries, "Infor") in a merger transaction pursuant to which Birst will become a wholly owned subsidiary of Infor (such transaction referred to herein as the "Acquisition"), this letter sets forth the terms of your employment with Infor  beginning on the calendar day immediately following the closing of the Acquisition.

Provided that you sign and deliver this letter as instructed below, subject to the consummation of the Acquisition and the other conditions set forth below, your employment under the terms of this letter will begin on the calendar day immediately after the Acquisition becomes effective (or such later date as you sign and deliver this letter to Infor).  You will initially remain employed by Birst, provided that Infor reserves its right to transfer your employment to another Infor entity.

Position:  The title of your position will be SVP, BI and Analytics, Birst.  In this position you will report to Charles Philips, CEO.  Your principal place of employment shall be located within 35 miles of San Francisco, CA.

Compensation:  Your annual base salary will be $350,000 subject to applicable withholdings, payable semi-monthly and in accordance with Infor's normal payroll procedures.  In addition to your base salary, during your employment with Birst or Infor, you will be eligible for a management bonus of up to $100,000 (on a full year basis) based on the achievement of agreed upon business objectives during the applicable fiscal year.  Such bonus will be payable after the end of Infor's fiscal year, promptly following completion of Infor's financial audit with respect to such fiscal year and in no event later than December 31 of the same calendar year (e.g., the bonus payment for the 2018 fiscal year will be made no later than December 31, 2018).  Infor's 2018 fiscal Year ("FY18") ends April 30, 2018 and any amount payable for FY18 may be prorated to reflect the partial year resulting from the timing of the Acquisition.

Ongoing Equity Awards.  You will be eligible to receive periodic Infor equity grants following the Acquisition that are provided to similarly situated Infor executives.

Retention Bonuses:  You will be eligible to receive a one-time retention bonus in the amount of $2,901,958.50, subject to applicable withholdings (the "First Retention Bonus"), provided that you remain continuously employed by Infor through the date that is six (6) months after the closing of the Acquisition (the "First Retention Bonus Date").  You will no longer be eligible for the First Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause (defined below) prior to the First Retention Bonus Date.  The First Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the First Retention Bonus Date or in the event of your death before the First Retention Bonus Date.

CONFIDENTIAL

You will be eligible to receive a second one-time retention bonus in the amount of $2,901,958.50, subject to applicable withholdings (the "Second Retention Bonus"), provided that you remain continuously employed by Infor through the date that is twelve (12) months after the closing of the Acquisition (the "Second Retention Bonus Date"). You will no longer be eligible for the Second Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause prior to the Second Retention Bonus Date. The Second Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the Second Retention Bonus Date or in the event of your death before the Second Retention Bonus Date.

You will be eligible to receive a third one-time retention bonus in the amount of $5,803,917.00, subject to applicable withholdings (the "Third Retention Bonus"), provided that you remain continuously employed by Infor through the date that is twenty four (24) months after the closing of the Acquisition (the "Third Retention Bonus Date"). You will no longer be eligible for the Third Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause prior to the Third Retention Bonus Date. The Third Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the Third Retention Bonus Date or in the event of your death before the Third Retention Bonus Date.

For purposes of this letter, "Cause" means (i) the conviction of, or a plea of plea of nolo contendere to any charge of a felony or any act of fraud or any act or omission involving dishonesty, or material disloyalty with respect to Infor, or any of its customers or suppliers or other material business relations, (ii) misconduct subjecting Infor to public disgrace or disrepute, (iii) failure or refusal to perform duties as reasonably directed by Infor, following written notice of same and a meaningful opportunity to cure, (iv) gross negligence or willful misconduct, (v) use of illegal drugs or abuse of other drugs or excessive consumption of alcohol interfering with the performance of your duties to Infor, or (vi) any material breach by you of any agreement between you and Infor, including without limitation, your breach of any provision of any nondisclosure, non-competition, trade secret protection or developments agreement.

In the event that the First Retention Bonus, Second Retention Bonus and/or the Third Retention Bonus becomes payable, it will be paid to you in the first regularly scheduled payroll following the date that the applicable bonus becomes payable. In no event will the First Retention Bonus, Second Retention Bonus or the Third Retention Bonus be subject to proration or other partial payment.

<u>Earnout Bonuses:</u> You will be eligible to receive an earnout bonus based on the growth of the business acquired in the Acquisition during each of FY18 and FY19 (each an "Earnout Bonus" and together the "Earnout Bonuses"). The Earnout Bonuses (if any) will be payable after the end of the applicable fiscal year, promptly following completion of Infor's financial audit with respect to such fiscal year and in no event later than December 31 of the same calendar year (*i.e.*, the Earnout Bonus for FY18 (if any) will be paid no later than December 31, 2018, and the Earnout Bonus for FY19 (if any) will be paid no later than December 31, 2019).

The FY18 Earnout Bonus shall be an amount equal to 35% of the amount by which FY18 Bookings exceeds $18 million. The FY19 Earnout Bonus shall be an amount equal to 28% of the amount by which FY19 Bookings exceeds $21 million.

For purposes of calculating the Earnout Bonuses, the following capitalized terms shall have the meanings set forth below:

> "**Annual Contract Value**" or "**ACV**' means the total amount of subscription fees applicable to Birst Offerings payable under a contract, divided by the term of the

subscription in years (e.g. $300,000 total subscription fees for a 3 year subscription results in an ACV of $100,000)

"**Allowed Attrition"** means, for any fiscal year, an amount equal 20% of the Year End Subscription Revenue Run Rate for all customers subscribing to the Birst Offerings for the immediately preceding fiscal year.

"**Attrition"** means the ACV of all reductions to previously contracted subscription fees for Birst Offerings determined on a customer by customer for the applicable fiscal year.

"**Birst Offerings"** shall mean any and all products or services offered, licensed, provided, sold, distributed or otherwise exploited by Birst at the time of the Acquisition and any and all products or services already designed and developed by or for Birst at the time of the Acquisition, including all versions and releases of the foregoing, together with any related user documentation.

"**Booking"** means ACV from subscriptions to the Birst Offerings that are Contracted in the applicable fiscal year.  The amount of any Booking shall include only that portion of the subscription fees payable under a contract that are attributable to the Birst Offerings.  If Birst Offerings are sold bundled or in combination with other products or services offered by Infor, the subscription revenue for purposes hereof shall be deemed to be the list price of the Birst Offerings as if the Birst Offerings had been sold individually; provided however, that if Birst Offerings are sold bundled with other products or services offered by Infor where a discount was applied to such sale, the aggregate discount on such sale shall be applied pro rata to each product in such sale, including the applicable Birst Offerings, in accordance with each such product's list price.  Bookings associated with existing customers shall include only the amount of incremental subscription fees (i.e. exclude any amounts representing renewal of prior subscriptions).

"**Contracted"** means that the written contract or order forms have been duly executed by all parties and subscription revenue recognition in accordance with GAAP and Infor's revenue recognition policies has commenced.

"**FY17"** means the fiscal year ending April 30, 2017

"**FY18**' means Infor's fiscal year ending April 30, 2018

"**FY19**' means Infor's fiscal year ending April 30, 2019

"**FY18 Bookings**" means the Bookings for FY18 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

"**FY19 Bookings**" means the Bookings for FY19 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

"**Year End Subscription Revenue Run-Rate"** means, for any fiscal year, the amount of net revenue (as defined by and determined in accordance with GAAP and Infor's revenue recognition policies) from the sale of the Birst Offerings attributed to the last full month of the fiscal year, multiplied by twelve (12).

By way of example and in no way guaranteeing the amount of any Earnout Bonus, in the event that:

Bookings = $25 million,

FY17 Year End Subscription Revenue Run Rate = $41M

Allowed Attrition (20%) = $8.2M

Attrition = $12M

FY18 Bookings = $25M Bookings – ($12M Attrition – $8.2 Allowed Attrition)

= $25M - $3.8M

= $21.2M

FY18 Bookings exceeds $18M by $3.2M

The FY18 Earnout Bonus amount would be $1,120,000 (i.e. $3.2 million excess x 0.35).

For the avoidance of doubt, in the event that you are no longer employed by Infor at the end of the relevant fiscal year, no Earnout Bonus shall be payable, in whole or in part, regardless of the circumstances under which employment was terminated.

Benefits:  You will continue to be eligible for all employment benefits as generally offered to employees of Birst who remain employed with Infor following the Acquisition.   Your participation in all such employee benefit plans is subject to the terms of such plans, as they may be modified from time-to-time including by transition to the benefits generally offered to employees of Infor.

At-Will Employment:  Your employment shall be considered at all times to be on an "at-will" basis.  This means either you or Infor may terminate your employment at any time, with or without notice, and for any or no reason.  In addition, nothing in this letter summarizing your prospective employment terms shall constitute or be construed as a guarantee of employment for any definite period of time or a contract of employment.  By signing this letter as instructed below, you acknowledge and agree that any prior employment agreement, severance arrangements or terms and conditions of employment between Birst and you (the "Birst Employment Agreement") shall terminate and be of no further force or effect immediately upon the consummation of the Acquisition and that neither Birst nor Infor shall owe any further obligation to you (including, without limitation, any severance or termination payment) under such Birst Employment Agreement.

Infor may modify its policies and practices, including the compensation and benefits it provides from time to time, as it deems necessary; provided that such modifications shall not alter or amend the Compensation, Earnout Bonuses or Retention Bonuses specified in this letter.  However, the at-will nature of your employment may be modified only by a written agreement signed by both you and Infor.

Nondisclosure, Noncompetition and Developments Agreement: It is also a condition of your prospective employment that, prior to the commencement of  employment with Infor, you must sign Infor's Nondisclosure, Noncompetition and Developments Agreement, which contains additional requirements for the protection of Infor's trade secret, confidential and proprietary information, protections pertaining to Infor's business relationships, as well as an assignment to Infor of the ideas, concepts and other intellectual property that you create during your employment.

Immigration:  For purposes of United States' immigration law, you will be required to provide to Infor documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your start date.

<u>No Employment-Related Claims</u>: You hereby confirm that you have no claims for unpaid wages or other employment-related remuneration against Birst other than for your regular salary for the current pay period as of the effective time of the Acquisition.  As a condition of accepting employment with Infor and by signing below, you confirm your agreement not to make any claim against Infor or any of its past, present or future affiliated companies for any employment-related matters arising from or in any way related to events that occurred prior to the date on which you countersign this letter, including without limitation, any claims for wages earned prior to commencing employment with Infor; provided that the foregoing agreement specifically excludes (i) any rights you may have in your capacity as a security holder of Birst in connection with the Acquisition; and (ii) any rights to indemnification or exculpation from Birst that you may have in your capacity as a former officer or director of Birst.  You also confirm your permission for Birst to provide, and for Infor to receive and maintain copies of your employment records, personnel file and any other materials and information related to your employment with Birst.

Your signature below will acknowledge your understanding and agreement to the terms and conditions set forth in this letter.  These terms supersede any other agreements (including, without limitation the Prior Agreement) or promises made to you by anyone affiliated with Infor, whether oral or written.  Infor reserves the right to withdraw these terms without further notice if they are not timely accepted by you or if any aspect (e.g. job references, education, proof of citizenship, etc.) of your qualifications cannot be verified and these terms shall only become valid upon Infor's final acceptance of this letter, signed by you.

Should you have any questions regarding this letter, please call me at 718-501-3320.

Welcome to Infor we look forward to having you as part of the team!

Sincerely,

Anne Benedict
SVP, Talent

DocuSign Envelope ID: D82E507B-0505-44C2-BF20-3C6D99E8309B

ACKNOWLEDGEMENT AND ACCEPTANCE:

The undersigned Bradley Peters acknowledges receipt of the foregoing letter setting forth the terms of Infor's offer of employment.  The undersigned accepts such offer subject to the terms of the letter and agrees to its terms, including, without limitation the termination of the Birst Employment Agreement.

Accepted: _____    _____

Bradley Peters                                    Date

                                              May 30, 2017



Exhibit B



641 Avenue of the Americas
New York, NY 10011
800-260-2640
infor.com

May 30, 2017

Paul Staelin
1 Lost Valley Ct
Orinda, CA  95463

Re:  Employment offer in connection with the acquisition of Birst, Inc.

Dear Paul,

In connection with the anticipated acquisition of Birst, Inc. and its subsidiaries (collectively, "Birst") by Infor (US), Inc. (collectively with its affiliates and subsidiaries, "Infor") in a merger transaction pursuant to which Birst will become a wholly owned subsidiary of Infor (such transaction referred to herein as the "Acquisition"), this letter sets forth the terms of your employment with Infor  beginning on the calendar day immediately following the closing of the Acquisition.

Provided that you sign and deliver this letter as instructed below, subject to the consummation of the Acquistion and the other conditions set forth below, your employment under the terms of this letter will begin on the calendar day immediately after the Acquisition becomes effective (or such later date as you sign and deliver this letter to Infor).  You will initially remain employed by Birst, provided that Infor reserves its right to transfer your employment to another Infor entity.

Position:  The title of your position will be SVP Customer Success, BI & Analytics, Birst.  In this position you will report to Brad Peters, SVP BI and Analytics, Birst.

Compensation:  Your annual base salary will be $250,000 subject to applicable withholdings, payable semi-monthly and in accordance with Infor's normal payroll procedures.  In addition to your base salary you will be eligible for a management bonus of up to $70,000 (on a full year basis) based on the achievement of agreed upon business objectives during the applicable fiscal year.  Such bonus will be payable after the end of Infor's fiscal year, promptly following completion of Infor's financial audit with respect to such fiscal year and in no event later than December 31 of the same calendar year (*e.g.*, the bonus payment for the 2018 fiscal year will be made no later than December 31, 2018).  Infor's 2018 fiscal Year ("FY18") ends April 30, 2018 and any amount payable for FY18 may be prorated to reflect the partial year resulting from the timing of the Acquisition.

Ongoing Equity Awards.  You will be eligible to receive periodic Infor equity grants following the Acquisition that are provided to similarly situated Infor executives.

Retention Bonuses:  You will be eligible to receive a one-time retention bonus in the amount of $1,153,625.50, subject to applicable withholdings (the "First Retention Bonus"), provided that you remain continuously employed by Infor through the date that is six (6) months after the closing of the Acquisition (the "First Retention Bonus Date").  You will no longer be eligible for the First Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause (defined below) prior to the First Retention Bonus Date.  The First Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the First Retention Bonus Date or in the event of your death before the First Retention Bonus Date.

You will be eligible to receive a second one-time retention bonus in the amount of $1,153,625.50, subject to applicable withholdings (the "Second Retention Bonus"), provided

that you remain continuously employed by Infor through the date that is twelve (12) months after the closing of the Acquisition (the "Second Retention Bonus Date").  You will no longer be eligible for the Second Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause prior to the Second Retention Bonus Date. The Second Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the Second Retention Bonus Date or in the event of your death before the Second Retention Bonus Date.

You will be eligible to receive a third one-time retention bonus in the amount of $2,307,250.00, subject to applicable withholdings (the "Third Retention Bonus"), provided that you remain continuously employed by Infor through the date that is twenty four (24) months after the closing of the Acquisition (the "Third Retention Bonus Date").  You will no longer be eligible for the Third Retention Bonus if you voluntarily resign your employment or if your employment is terminated by Infor for Cause prior to the Third Retention Bonus Date.  The Third Retention Bonus will be paid to you in the event that your employment is terminated by Infor without Cause before the Third Retention Bonus Date or in the event of your death before the Third Retention Bonus Date.

For purposes of this letter, "Cause" means (i) the conviction of, or a plea of plea of nolo contendere to any charge of a felony or any act of fraud or any act or omission involving dishonesty, or material disloyalty with respect to Infor, or any of its customers or suppliers or other material business relations, (ii) misconduct subjecting Infor to  public disgrace or disrepute, (iii) failure or refusal to perform duties as reasonably directed by Infor, following written notice of same and a meaningful opportunity to cure,  (iv) gross negligence or willful misconduct, (v) use of illegal drugs or abuse of other drugs or excessive consumption of alcohol interfering with the performance of your duties to Infor, or (vi) any material breach by you of any agreement between you and Infor, including without limitation, your breach of any provision of any nondisclosure, non-competition, trade secret protection or developments agreement.

In the event that the First Retention Bonus, Second Retention Bonus and/or the Third Retention Bonus becomes payable, it will be paid to you in the first regularly scheduled payroll following the date that the applicable bonus becomes payable.  In no event will the First Retention Bonus, Second Retention Bonus or the Third Retention Bonus be subject to proration or other partial payment.

Earnout Bonuses: You will be eligible to receive an earnout bonus based on the growth of the business acquired in the Acquisition during each of FY18 and FY19 (each an "Earnout Bonus" and together the "Earnout Bonuses"). The Earnout Bonuses (if any) will be payable after the end of the applicable fiscal year, promptly following completion of Infor's financial audit with respect to such fiscal year and in no event later than December 31 of the same calendar year (*i.e.*, the Earnout Bonus for FY18 (if any) will be paid no later than December 31, 2018, and the Earnout Bonus for FY19 (if any) will be paid no later than December 31, 2019).

The FY18 Earnout Bonus shall be an amount equal to 11% of the amount by which FY18 Bookings exceeds $18 million.  The FY19 Earnout Bonus shall be an amount equal to 8% of the amount by which FY19 Bookings exceeds $21 million.

For purposes of calculating the Earnout Bonuses, the following capitalized terms shall have the meanings set forth below:

> "***Annual Contract Value***" or "***ACV***" means the total amount of subscription fees applicable to  Birst Offerings payable under a contract, divided by the term of the subscription in years (e.g. $300,000 total subscription fees for a 3 year subscription results in an ACV of $100,000)

**"Allowed Attrition"** means, for any fiscal year, an amount equal 20% of the Year End Subscription Revenue Run Rate for all customers subscribing to the Birst Offerings for the immediately preceding fiscal year.

**"Attrition"** means the ACV of all reductions to previously contracted subscription fees for Birst Offerings determined on a customer by customer for the applicable fiscal year.

**"Birst Offerings"** shall mean any and all products or services offered, licensed, provided, sold, distributed or otherwise exploited by Birst at the time of the Acquisition and any and all products or services already designed and developed by or for Birst at the time of the Acquisition, including all versions and releases of the foregoing, together with any related user documentation.

**"Booking"** means ACV from subscriptions to the Birst Offerings that are Contracted in the applicable fiscal year.  The amount of any Booking shall include only that portion of the subscription fees payable under a contract that are attributable to the Birst Offerings.  If Birst Offerings are sold bundled or in combination with other products or services offered by Infor, the subscription revenue for purposes hereof shall be deemed to be the list price of the Birst Offerings as if the Birst Offerings had been sold individually; provided however, that if Birst Offerings are sold bundled with other products or services offered by Infor where a discount was applied to such sale, the aggregate discount on such sale shall be applied pro rata to each product in such sale, including the applicable Birst Offerings, in accordance with each such product's list price.  Bookings associated with existing customers shall include only the amount of incremental subscription fees (i.e. exclude any amounts representing renewal of prior subscriptions).

**"Contracted"** means that the written contract or order forms have been duly executed by all parties and subscription revenue recognition in accordance with GAAP and Infor's revenue recognition policies has commenced.

**"FY17"** means the fiscal year ending April 30, 2017

**"FY18**' means Infor's fiscal year ending April 30, 2018

"**FY19**' means Infor's fiscal year ending April 30, 2019

"**FY18 Bookings**" means the Bookings for FY18 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

"**FY19 Bookings**" means the Bookings for FY19 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

**"Year End Subscription Revenue Run-Rate"** means, for any fiscal year, the amount of net revenue (as defined by and determined in accordance with GAAP and Infor's revenue recognition policies) from the sale of the Birst Offerings attributed to the last full month of the fiscal year, multiplied by twelve (12).

By way of example and in no way guaranteeing the amount of any Earnout Bonus, in the event that:

Bookings = $25 million,

FY17 Year End Subscription Revenue Run Rate = $41M

Allowed Attrition (20%) = $8.2M

Attrition = $12M

FY18 Bookings = $25M Bookings – ($12M Attrition – $8.2 Allowed Attrition)

= $25M - $3.8M

= $21.2M

FY18 Bookings exceeds $18M by $3.2M

The FY18 Earnout Bonus amount would be $352,000 (i.e. $3.2 million excess x 0.11).

For the avoidance of doubt, in the event that you are no longer employed by Infor at the end of the relevant fiscal year, no Earnout Bonus shall be payable, in whole or in part, regardless of the circumstances under which employment was terminated.

<u>Benefits</u>:  You will continue to be eligible for all employment benefits as generally offered to employees of Birst who remain employed with Infor following the Acquisition.   Your participation in all such employee benefit plans is subject to the terms of such plans, as they may be modified from time-to-time including by transition to the benefits generally offered to employees of Infor.

<u>At-Will Employment</u>:  Your employment shall be considered at all times to be on an "at-will" basis.  This means either you or Infor may terminate your employment at any time, with or without notice, and for any or no reason.  In addition, nothing in this letter summarizing your prospective employment terms shall constitute or be construed as a guarantee of employment for any definite period of time or a contract of employment.  By signing this letter as instructed below, you acknowledge and agree that any prior employment agreement, severance arrangements or terms and conditions of employment between Birst and you (the "Birst Employment Agreement") shall terminate and be of no further force or effect immediately upon the consummation of the Acquisition and that neither Birst nor Infor shall owe any further obligation to you (including, without limitation, any severance or termination payment) under such Birst Employment Agreement.

Infor may modify its policies and practices, including the compensation and benefits it provides from time to time, as it deems necessary; provided that such modifications shall not alter or amend the Compensation, Earnout Bonuses or Retention Bonuses specified in this letter.  However, the at-will nature of your employment may be modified only by a written agreement signed by both you and Infor.

<u>Nondisclosure, Noncompetition and Developments Agreement</u>: It is also a condition of your prospective employment that, prior to the commencement of  employment with Infor, you must sign Infor's Nondisclosure, Noncompetition and Developments Agreement, which contains additional requirements for the protection of Infor's trade secret, confidential and proprietary information, protections pertaining to Infor's business relationships, as well as an assignment to Infor of the ideas, concepts and other intellectual property that you create during your employment.

<u>Immigration</u>:  For purposes of United States' immigration law, you will be required to provide to Infor documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your start date.

<u>No Employment-Related Claims</u>: You hereby confirm that you have no claims for unpaid wages or other employment-related remuneration against Birst other than for your regular salary for the current pay period as of the effective time of the Acquisition.  As a condition of

accepting employment with Infor and by signing below, you confirm your agreement not to make any claim against Infor or any of its past, present or future affiliated companies for any employment-related matters arising from or in any way related to events that occurred prior to the date on which you countersign this letter, including without limitation, any claims for wages earned prior to commencing employment with Infor; provided that the foregoing agreement specifically excludes (i) any rights you may have in your capacity as a security holder of Birst in connection with the Acquisition; and (ii) any rights to indemnification or exculpation from Birst that you may have in your capacity as a former officer or director of Birst.  You also confirm your permission for Birst to provide, and for Infor to receive and maintain copies of your employment records, personnel file and any other materials and information related to your employment with Birst.

Your signature below will acknowledge your understanding and agreement to the terms and conditions set forth in this letter.  These terms supersede any other agreements (including, without limitation the Prior Agreement) or promises made to you by anyone affiliated with Infor, whether oral or written.  Infor reserves the right to withdraw these terms without further notice if they are not timely accepted by you or if any aspect (e.g. job references, education, proof of citizenship, etc.) of your qualifications cannot be verified and these terms shall only become valid upon Infor's final acceptance of this letter, signed by you.

Should you have any questions regarding this letter, please call me at 718-501-3320.

Welcome to Infor we look forward to having you as part of the team!

Sincerely,

Anne Benedict
SVP, Talent

ACKNOWLEDGEMENT AND ACCEPTANCE:

The undersigned Paul Staelin acknowledges receipt of the foregoing letter setting forth the terms of Infor's offer of employment.  The undersigned accepts such offer subject to the terms of the letter and agrees to its terms, including, without limitation the termination of the Birst Employment Agreement.

Accepted: _____       May 30, 2017
                                                   _____
          Paul Staelin                             Date

Exhibit C



641 Avenue of the Americas
New York, NY 10011
800-260-2640
infor.com

July 25, 2018

David Gray
Wren House
Shacklestead Lane
Godalming, SURREY GU7 1RP
United Kingdom

Re:      Second Amended and Restated Earnout Bonus Eligibility

Dear David,

This letter amends and restates, in its entirety, that certain letter dated August 25, 2017 regarding Amended and Restated Earnout Bonus Eligibility in connection with Infor's acquisition of Birst previously acknowledged and agreed to by you (the "Prior A&R Earnout Letter").  Upon your acknowledgement of and agreement to the terms of this letter by return of a signed copy in accordance with the instructions below, the Prior A&R Earnout Letter will be of no further force or effect.

In connection with the acquisition of Birst, Inc. and its subsidiaries (collectively, "Birst") by Infor (US), Inc. (together with its subsidiaries (including Birst) and affiliates, "Infor") in a merger transaction pursuant to which Birst became a wholly owned subsidiary of Infor (US), Inc. (such transaction referred to herein as the "Acquisition") and subject to the terms and conditions of this letter, you are eligible to receive certain bonuses based on the growth of the business acquired in the Acquisition as described below.

In addition to your base salary and any variable compensation, bonus or sales commission payable to you in connection with your employment, you will be eligible to receive a bonus based on the growth of the business acquired in the Acquisition during each of Infor's fiscal years ending April 30, 2018 and April 30, 2019 (each an "Earnout Bonus" and together the "Earnout Bonuses"). The Earnout Bonuses (if any) will be payable after the end of the applicable fiscal year, promptly following completion of Infor's financial audit with respect to such fiscal year and in no event later than December 31 of the same calendar year (i.e., the Earnout Bonus for FY18 (if any) will be paid no later than December 31, 2018, and the Earnout Bonus for FY19 (if any) will be paid no later than December 31, 2019).

The FY18 Earnout Bonus shall be an amount equal to 5% of the amount by which FY18 Bookings exceeds $18 million. For the avoidance of doubt and notwithstanding the date of this letter, the FY18 Earnout Bonus pursuant to this letter shall not duplicate any FY18 Earnout Bonus paid or payable under the Prior A&R Earnout Letter. The FY19 Earnout Bonus shall be an amount equal to 11% of the amount by which FY19 Bookings exceeds $21 million.

For purposes of calculating the Earnout Bonuses, the following capitalized terms shall have the meanings set forth below.  For the avoidance of doubt, the definitions set forth below apply only to the calculation of Earnout Bonuses pursuant to this letter and shall have no effect on, nor shall they be affected by any contrary or conflicting terms or definitions in the Birst 2017 Sales Compensation Plan or any alternate or successor sales compensation plan in which you may participate.

>    "***Annual Contract Value***" or "***ACV***" means the total amount of subscription fees applicable to Birst Offerings payable under a contract, divided by the term of the subscription in years (e.g. $300,000 total subscription fees for a 3 year subscription results in an ACV of $100,000)

*"Allowed Attrition"* means, for any fiscal year, an amount equal 20% of the Year End Subscription Revenue Run Rate for all customers subscribing to the Birst Offerings for the immediately preceding fiscal year.

*"Attrition"* means the ACV of all reductions to previously contracted subscription fees for Birst Offerings determined on a customer by customer basis for the applicable fiscal year.

*"Birst Offerings"* shall mean any and all products or services offered, licensed, provided, sold, distributed or otherwise exploited by Birst at the time of the Acquisition and any and all products or services already designed and developed by or for Birst at the time of the Acquisition, including all versions and releases of the foregoing, together with any related user documentation.

*"Booking"* means ACV from subscriptions to the Birst Offerings that are Contracted in the applicable fiscal year.  The amount of any Booking shall include only that portion of the subscription fees payable under a contract that are attributable to the Birst Offerings. If Birst Offerings are sold bundled or in combination with other products or services offered by Infor, the subscription revenue for purposes hereof shall be deemed to be the list price of the Birst Offerings as if the Birst Offerings had been sold individually; provided however, that if Birst Offerings are sold bundled with other products or services offered by Infor where a discount was applied to such sale, the aggregate discount on such sale shall be applied pro rata to each product in such sale, including the applicable Birst Offerings, in accordance with each such product's list price.  Bookings associated with existing customers shall include only the amount of incremental subscription fees (i.e. exclude any amounts representing renewal of prior subscriptions).

*"Contracted"* means that the written contract or order forms have been duly executed by all parties and subscription revenue recognition in accordance with GAAP and Infor's revenue recognition policies has commenced.

*"FY17"* means the fiscal year ending April 30, 2017

*"FY18"* means Infor's fiscal year ending April 30, 2018

"*FY19*" means Infor's fiscal year ending April 30, 2019

"*FY18 Bookings*" means the Bookings for FY18 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

"*FY19 Bookings*" means the Bookings for FY19 <u>minus</u> any excess of Attrition over Allowed Attrition for FY18.

*"Year End Subscription Revenue Run-Rate"* means, for any fiscal year, the amount of net revenue (as defined by and determined in accordance with GAAP and Infor's revenue recognition policies) from the sale of the Birst Offerings attributed to the last full month of the fiscal year, multiplied by twelve (12).

By way of example and in no way guaranteeing the amount of any Earnout Bonus, in the event that:

Bookings = $25 million,

FY17 Year End Subscription Revenue Run Rate = $41M

Allowed Attrition (20%) = $8.2M

Attrition = $12M

FY18 Bookings = $25M Bookings − ($12M Attrition − $8.2 Allowed Attrition)

= $25M - $3.8M

= $21.2M

FY18 Bookings exceeds $18M by $3.2M

The FY18 Earnout Bonus amount would be $160,000 (i.e. $3.2 million excess x 0.05).

For the avoidance of doubt, there is no guarantee that the performance of the business acquired in the Acquisition will result in any minimum Earnout Bonus.  If the calculation of the Earnout Bonus as described in this letter does not yield a positive amount, no Earnout Bonus will be payable to you.

This letter shall not be construed as an agreement, either express or implied, to employ you for any stated term.  At all times during your employment with Infor your employment shall remain subject to Infor's policy of employment and local employment laws.  In the event that you are no longer employed by Infor at the end of the relevant fiscal year, no Earnout Bonus shall be payable, in whole or in part, regardless of the circumstances under which employment was terminated.  Nothing in this letter shall be construed as an agreement, either express or implied, to pay you any compensation or grant you any benefit beyond the end of your employment with Infor.

By signing and returning this letter, you acknowledge and agree to all terms and conditions hereof.  Any modification to this letter will not be effective unless in a writing that is signed by both you and a duly authorized representative of Infor.

Please scan and email signed letter to Louise.whitehouse@infor.com and mail signed letter to Infor, One Central Boulevard, Blyth Valley Business Park, Solihull, B90 8BG:

Yours Sincerely

Louise Whitehouse
Senior HR Manager UK, Ireland, MEA & Russia

_____

I have read and understood the terms regarding the Earnout Bonus.

Signature: _____

Printed Name: ____DAVID  GRAY_____

Date: _____02/08/18_____